**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Alfredo Camargo,<br>Petitioner<br>-vs-<br>Charles L. Ryan, et al.,<br>Respondents. | CV-13-2488-PHX-NVW (JFM)<br><br>**Amended[1] Report & Recommendation**<br>**on Petition for Writ of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Tucson, Arizona, filed a First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 2, 2014 (Doc. 6).  On August 1, 2014 Respondents filed their Answer (Doc. 14).   Petitioner filed a Reply on August 15, 2014 (Doc. 15).

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

The Presentence Investigation reflected the following summary from police reports:

> On July 11, 2007, the defendant, armed with a handgun, kidnapped [YM] from inside the garage of her residence. The

---

[1] Only as to basis for denying a certificate of appealability in section IV.

1

defendant forced her inside an awaiting vehicle that was being driven by another suspect. The suspects drove in [a] North bound direction and subsequently stopped in the parking lot of a business complex. When they exited the vehicle, [YM] called 9-1-1. [YM] exited the vehicle when she observed a police officer drive by, and she reported what had happened to her. Police chased the suspects, but only apprehended the defendant with the assistance of a K-9 police dog. The handgun used in the kidnapping was recovered near by, which officers observed the defendant throw as he fled on foot. A search of the suspect's vehicle revealed a rifle, a scarf, gloves, tape, and ammunition.

When interviewed, [YM] stated she, her husband [AM}, and her three nieces had just arrived to their home, and they were in the process of closing the garage when the suspect opened the other garage door and stated, "Where is Marquis?" When she stated she did not know a Marquis, the suspected grabbed her by the hand and forced her into a vehicle that was parked in front of her residence. While they were driving, the defendant gave her a cell phone, and the person on the other end asked where Marquis was, and if she was his sister. She indicated she did not know who Marquis was and that she was not related to him. The defendant took the phone back and told the driver to stop in the parking lot where both suspects exited from the vehicle. [YM] stated she feared for her life and believed she might never see her family again.

(Exhibit B, Present. Invest. At 1.)  (Exhibits to the Answer, Doc. 14, are referenced herein as "Exhibit ___.")


## B. PROCEEDINGS AT TRIAL

On July 18, 2007, Petitioner was indicted in Maricopa County Superior Court on charges of burglary, aggravated assault (two counts, one for YM and one for YM's husband, AM), kidnapping, and weapons misconduct.  (Exhibit A, Indictment.)

Counsel was appointed, and the case proceeded through a series of failed settlement conferences and plea negotiations, with Petitioner seeking to have new counsel appointed because of perceptions that trial counsel was attempting to bully him into taking a plea offer, and failing to adequately investigate the case and prepare for trial.  Counsel consistently responded that the promising avenues of investigation had been pursued and that he had indeed advised his client to accept the favorable plea offers. The final plea offer included a prison sentence cap of 15 years, but was rejected (*See* Exhibit C, Mot. Dismiss Counsel; Exhibit D, R.T. 11/13/07; Exhibit CC, R.T. 2/11/08; Exhibit E, Mot. Dismiss Counsel; and Exhibit F, R.T. 3/20/08.)

Change of Plea - On April 8, 2008, Petitioner appeared for trial, but asked to change his plea to a plea of guilty to the charges.  (Exhibit I, R.T. 4/8/08 at 1-8.)  The trial court reviewed the charges and the potential sentences, as well as allegations of prior convictions, and commission while on probation.  Petitioner admitted the prior convictions and that he was on probation.  (*Id.* at 8-10.)   Counsel provided a factual basis, with which Petitioner agreed.  (*Id.*at 10-16.)   The plea was accepted and Petitioner was found guilty of the offenses and the matter was set for sentencing.  (*Id.* at 16-19.)

Sentencing – On May 30, 2008, Petitioner appeared for sentencing, which was continued to and completed on July 22, 2008.  (Exhibit DD, R.T. 5/30/08; Exhibit J, R.T. 7/22/08.)   Petitioner was sentenced to 25 years in prison, followed by community supervision.  (*Id.* at 25; Exhibit H, Amend. Order Conf.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner did not file a direct appeal.  (Amend. Petition, Doc. 6 at 2.)

Moreover, as a pleading Arizona defendant, Petitioner had no right to file a direct appeal. *See* Ariz.R.Crim.P. 17.1(e); and *Montgomery v. Sheldon*, 181 Ariz. 256, 258, 889 P.2d 614, 616 (1995).


## D.  PROCEEDINGS ON POST-CONVICTION RELIEF

**First PCR Proceeding** - On August 16, 2008, Petitioner filed a Notice of Post-Conviction Relief (Exhibit K).  Counsel was appointed who ultimately filed a Notice of Completion of Review (Exhibit L), evidencing an inability to find an issue for review.

On August 11, 2009, Petitioner filed his PCR Petition (Exhibit M), arguing that his rights to counsel had been denied when his request for new counsel was denied and because he was required to proceed with counsel under a breakdown in communication, and his right to counsel on appeal was denied when PCR counsel failed to find an issue for review. The state responded (Exhibit N) that any challenge to Petitioner's right to pre-conviction counsel was waived by Petitioner's guilty plea, and that Petitioner had no

3

right to counsel in his PCR Proceeding.   The PCR Court summarily dismissed the Petition "[f]or the reasons stated in the Response to the Petition."  (Exhibit P, Order 7/7/10.)

On July 26, 2010, Petitioner filed, through counsel, a motion for a 30 day extension of time to seek reconsideration or review.  (Exhibit Q, Motion.) On the same date, Petitioner filed a *pro per* Motion to Extend, seeking an extension through September 30, 2010 (Exhibit S).   On July 28, 2010, the PCR court summarily granted "*defense counsel's* Request for Extension of Time."   (Exhibit R, Order 7/28/10, emphasis added.)

On August 9, 2010, Petitioner submitted a petition for review to the Arizona Supreme Court.  That filing was rejected on August 10, 2010 as properly submitted only to the Arizona Court of Appeals. (Exhibit EE, at Notice 8/10/10.)

On August 30, 2010, Petitioner filed a petition for review with the Arizona Court of Appeals.  (Exhibit EE.)  (*See* Exhibit T, Order 9/3/10 at 1.)  The petition was dated August 24, 2010.  (Exhibit EE, Petition at 3.)   On September 3, 2010 the Arizona Court of Appeals denied the Petition as untimely (Exhibit T).

**Second PCR Proceeding** – On September 30, 2010, Petitioner filed his second Notice of Post-Conviction Relief (Exhibit U).   On October 25, 2010, the PCR court summarily dismissed the proceeding as untimely.  (Exhibit V, Order 10/25/10.)

On January 18, 2011, Petitioner filed a Petition for Review with the Arizona Court of Appeals (Exhibit W). On December 4, 2012, the Arizona Court of Appeals summarily denied review.  (Exhibit Z, Order 12/4/12.)

On January 14, 2013, Petitioner filed a Petition for Review with the Arizona Supreme Court (Exhibit AA).   On March 27, 2013, the Arizona Supreme Court summarily denied review.  (Exhibit BB, Order 3/27/13.)

**E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current proceeding by filing his original

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on December 6, 2013 (Doc. 1).  On March 12, 2014, the Court dismissed that Petition with leave to amend as improperly challenging the denial of his second PCR petition, rather than his conviction.

On April 2, 2014, Petitioner filed his First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 6).  Petitioner's Petition asserts the following three grounds for relief:

> In Ground One, Petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights were violated by the "constructive denial of the right to counsel." Petitioner asserts that the trial court constructively denied him the right to counsel when it denied his motion for change of counsel, in which Petitioner explained that he had an irreconcilable conflict with his defense counsel.
>
> In Ground Two, Petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights were violated because Petitioner was denied effective assistance of post-conviction relief counsel. Specifically, Petitioner alleges that his post-conviction relief counsel was ineffective for failing to raise the trial court's constructive denial of Petitioner's right to counsel in a Rule 32 Petition.
>
> In Ground Three, Petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights were violated by the actions of counsel as described in Grounds One and Two.

(Order 5/5/14, Doc. 7 at 2.)   Service and a response was ordered on May 5, 2014.  (*Id.*)

**Response** - On August 1, 2014, Respondents filed their Response ("Answer") (Doc. 14).   Respondents argue the Petition is untimely, Ground 1 is procedurally defaulted, and all the claims are without merit.

**Reply** - On August 15, 2014, Petitioner filed a Reply (Doc. 15).  Petitioner argues that he did not waive any claims of ineffective assistance of trial counsel in his second PCR notice, that his petition for review in his first PCR proceeding was timely filed, his second PCR proceeding was filed within 30 days of the dismissal of his petition for review in his first proceeding and only raised issues properly asserted in a second PCR petition, and that the dismissals in both proceedings were erroneous.  He argues this federal habeas Court is, for purposes of the habeas statute of limitations, free to ignore erroneous state court rulings, citing *Upshaw v. Singletary*, 70 F.3d 576 (11th Cir. 1995) and *Holloway v. Horn*, 355 F.3d 707 (3rd Cir. 2008).  He asserts that to the extent there

is a dispute on these issues, remand is appropriate.  He argues that such errors not only render his federal filing timely, but justifies equitable tolling.  Petitioner further argues the merits of his claims.

### III. APPLICATION OF LAW TO FACTS

**A.  TIMELINESS**

**1.   One Year Limitations Period**

Respondents assert that Petitioner's Petition is untimely.  As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts.  28 U.S.C. § 2244(d).  Petitions filed beyond the one year limitations period are barred and must be dismissed. *Id.*

**2.  Commencement of Limitations Period**

**Conviction Final** - The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[2]

For an Arizona noncapital pleading defendant, the conviction becomes "final" at the conclusion of the first "of-right" post-conviction proceeding under Rule 32. "Arizona's Rule 32 of-right proceeding for plea-convicted defendants is a form of direct review within the meaning of 28 U.S.C. § 2244(d)(1)(A)." *Summers v. Schriro,* 481 F.3d 710, 717 (9th Cir. 2007). "To bring an of-right proceeding under Rule 32, a plea-convicted defendant must provide to the Arizona Superior Court, within 90 days of

---

[2]  Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).  Except as discussed hereinafter, Petitioner proffers no argument that any of these apply.

conviction and sentencing in that court, notice of his or her intent to file a Petition for Post-Conviction Review." *Id.* at 715 (citing Ariz. R.Crim. P. 32.4(a)).

Here, Petitioner's first PCR proceeding was commenced within 90 days of his conviction and sentencing, and thus constituted direct appeal for purposes of § 2244.

On July 28, 2010, the PCR court summarily granted "defense counsel's Request for Extension of Time" to file a petition for review. (Exhibit R, Order 7/28/10.)   That motion sought a 30 day extension of time to seek reconsideration or review.  (Exhibit Q, Motion.)   Construing the order in Petitioner's favor, Petitioner had through Friday, August 27, 2010 to file his petition for review.

Although Petitioner promptly submitted a petition for review to the Arizona Supreme Court, that filing was rejected on August 10, 2010 as properly submitted only to the Arizona Court of Appeals. (Exhibit EE, at Notice 8/10/10.)   Accordingly, this failed filing did not continue his direct review.

Petitioner filed his petition for review with the Arizona Court of Appeals on August 30, 2010 (Exhibit EE). (*See* Exhibit T, Order 9/3/10 at 1.) However, that petition was dismissed as untimely (Exhibit T).  An untimely attempt at direct review does not alter the finality of the conviction.  *Cf. Jimez v. Quarterman*, 555 U.S. 113, 121 (2009) (finality of conviction extended "where a state court grants a criminal defendant the right to file an out-of-time direct appeal").

It is true that this Petition for Review was dated August 24, 2010.  (Exhibit EE, Petition at 3.)    In their Answer, Respondents "assume" that Petitioner's filings were "filed" on the date they were signed.  (Answer, Doc. 14 at 9, n. 3.) Petitioner argues that this "presumption" renders his Petition for Review timely.  (Reply, Doc. 15 at 9.)  To the contrary, the mailbox rule (assuming it applies to the state proceeding) treats documents as "filed" when they are placed in the prison mailbox.  *See e.g. Porter v. Ollison,* 620 F.3d 952, 958 (9th Cir. 2010) ("petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing.").  Petitioner proffers nothing to show that he handed his petition to prison officials on any date sooner than August 30, 2010.

7

The filing itself does not reflect such delivery.

Accordingly, the undersigned finds that the Petition for Review in the first PCR was filed August 30, 2010, and was untimely, and thus Petitioner's time for review expired on the deadline set by the PCR court, August 27, 2010.  Thus, Petitioner's conviction became final by conclusion of "direct review" on August 27, 2010.

**Conclusion re Commencement and Timeliness** - Therefore, Petitioner's one year began running no later than Saturday, August 28, 2010, and without any tolling expired on Monday, August 29, 2011.

Plaintiff's amended habeas petition (Doc. 6) was not filed until April 2, 2014, claims in an amended petition "relate back to the date of the original pleading when the claim[s] asserted in the amended [petition] arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original [petition]." *Mayle v. Felix*, 545 U.S. 644, 656 (2005) (internal quotation marksomitted); *accord Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013).  Respondents concede that Petitioner's First Amended Petition was on the same operative facts as his original Petition, and thus the amendment relates back to the filing of his original Petition.  (Answer, Doc. 14 at 16, n. 8.)  Petitioner's original Petition filed December 6, 2013 (Doc. 1).  Even related back to that date, Petitioner's habeas petition was over two years delinquent.[3]

**3. Statutory Tolling**

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  This provision only applies to state proceedings, not to federal proceedings.  *Duncan v. Walker*, 533 U.S. 167 (2001).

Petitioner's limitations period commenced running no later than August 28, 2010.

---

[3] Petitioner's original habeas Petition is dated December 3, 2013. (Orig. Petition, Doc. 1 at 11.)  Even if this Court were to find that the Petition should be deemed filed as of that date rather than December 6, 2013, the difference of three days would not be sufficient to make Petitioner's Petition timely.

Petitioner's second PCR proceeding was commenced on September 30, 2010, just 33 days after his limitations period began running. However, that petition was dismissed as untimely. (Exhibit V, Order 10/25/10.) Accordingly, Petitioner is not entitled to any statutory tolling for the pendency of his second PCR proceeding.

Petitioner argues that dismissal was in error.

**<u>Authority to Reject State Court Determination of Timeliness</u>** - As argued by Respondents, whether a state petition is untimely is a question of state law. "What we intimated in [*Carey v. Saffold*, 536 U.S. 214 (2002)] we now hold: 'When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005). In *Zepeda v. Walker*, 581 F.3d 1013 (2009), the Ninth Circuit held that the "adequacy" analysis applied to state procedural bars in the procedural default realm has no application in the context of § 2244(d)(2), and thus it was irrelevant whether a state time limitation was firmly established and regularly followed. *See also White v. Martel*, 601 F.3d 882 (9th Cir. 2010).

But, the undersigned is not convinced that the language of *Pace* or the holding of *Zepeda* precludes the federal habeas court from analyzing whether a state court's rejection of a PCR petition as untimely was correct under state law in the context of applying statutory tolling. By its own terms, *Pace* only precludes tolling for a state petition which "*is* untimely under state law," 544 U.S. at 414, not for state petitions which have merely been treated as untimely. *Cf. Evans v. Chavis* , 546 U.S. 189 (2006) (requiring habeas court to evaluate whether a summary decision was on timeliness grounds by deciding for itself whether the state petition was timely). Similarly, the undersigned is not convinced that importation of an "adequacy" standard is necessary to conclude that for purposes of the application of § 2244(d)(2) the state court simply wrongly held, under state law, that a state petition was untimely.

The undersigned notes that Petitioner references *Upshaw v. Singletary*, 70 F.3d 576 (1995) as holding that tolling not prevented by improper application of state bar.

Reply, Doc. 15 at 11.  *Upshaw*, however, dealt not with tolling, but failure to properly exhaust state remedies because of a procedural default.

Petitioner also relies upon *Holloway v. Horn*, 355 F.3d 707 (3rd Cir. 2008). *Holloway* similarly dealt with issues of exhaustion, and simply held that a claim was not unexhausted where the state court had failed to apply a state procedural bar that might have barred consideration of the federal claim.  *Id.* at 713-714.

Nonetheless, for the following reasons the undersigned concludes that state law supported the rejection of Petitioner's second PCR petition as untimely.  Therefore, the authority of the habeas court to reject a wrong timeliness determination need not be reached.

**Dismissal as Untimely was Proper** - Petitioner argues that the PCR court misread his petition as asserting ineffective assistance of trial counsel, when he actually asserted a claim of ineffective assistance of PCR counsel, and thus improperly dismissed his petition as untimely.  (Reply, Doc. 15 at 10.)  Indeed, the PCR court seems to have done so, describing the second proceeding as "claiming ineffective assistance of trial counsel."  (Exhibit V, Order 10/25/10 at 1.)  Conversely, Petitioner's second Notice of Post Conviction Relief plainly referenced "a subsequent Rule 32 to challenge ineffectiveness in the first Rule 32 by a pleading defendant."  (Exhibit U, 2nd PCR Not.) In support of that assertion, Petitioner cited "*State v. Pruett*, 912 P.2d 1357 (1995)." (*Id.*)

In *Pruett*, Arizona held that in the context of a pleading defendant, "a second notice of post-conviction relief for a claim of ineffectiveness of previous Rule 32 counsel is timely if filed within 30 days of the order and mandate affirming the trial court's denial of the petitioner's first petition for post-conviction relief." *State v. Pruett*, 185 Ariz. 128, 131, 912 P.2d 1357, 1360 (Ct. App. 1995).  Thus, Petitioner was entitled to bring a claim of ineffective assistance of PCR counsel in a second PCR proceeding. Conversely, a claim of ineffective assistance of trial counsel would have been untimely.  Confusing the two could have resulted in the erroneous dismissal as untimely of a prompt 2nd PCR petition asserting ineffectiveness of PCR counsel.

1    Indeed, Respondents half-heartedly recognize such error in addressing anticipated

2    claims for equitable tolling.  (Answer, Doc. 14 at 17.)

3    Here, however, Petitioner's second PCR petition was untimely even under the

4    holding of *Pruett* because it was filed more than 35 days (providing for service by mail

5    under Ariz. R. Crim. P. 1.3) after the culmination of his first PCR proceeding.   The

6    second PCR notice (Exhibit U) was filed no earlier than September 24, 2010, while his

7    first PCR petition culminated some 79 days earlier, on July 7, 2010, when the PCR court

8    dismissed the petition.  (*See* Exhibit P, Order 7/7/10.)

9    Arguably, had Petitioner timely sought review of the dismissal of his first PCR

10   petition, the time for filing his second PCR proceeding would have been extended until

11   culmination of those review proceedings.  Here, however Petitioner did not timely seek

12   review, and thus his first PCR proceedings ended with the PCR court's order.

13   It is true that the language of *Pruett* speaks in terms of an "order and mandate

14   affirming the trial court's denial."  185 Ariz. at 131, 912 P.2d at 1360.   However,

15   *Pruett's* formulation of the deadline was founded on the existence in that case of a

16   petition for review of the denial of the first PCR proceeding.  Here, because Petitioner's

17   petition for review in his first PCR proceeding was deemed untimely, there was no order

18   and mandate affirming the trial court's order.

19   *Pruett*'s analysis was based upon the application of the pre-2000 amendments

20   version of Arizona Rule of Criminal Procedure 32.4(a).   Under that rule, a second PCR

21   proceeding was due "within thirty days after the issuance of the order and mandate in the

22   direct appeal."  Under the 2000 Amendments to the rule, however, the second petition is

23   due "within thirty days after the issuance of the final order or mandate by the appellate

24   court in the petitioner's first petition for post-conviction relief proceeding."  Ariz. R.

25   Crim. P. 32.4(a).   *Cf.* Ariz. R. Crim. P. 31.23(a) (providing for issuance of mandates

26   only by Arizona Court of Appeals and Arizona Supreme Court.)  Where no review is

27   sought in the first PCR proceeding, the "final order" is that by the PCR court.  While the

28   rule speaks in terms of action "by the appellate court," that limitation can rationally be

11

read to apply only to the mandate on review, such mandates only being issued by the appellate courts.   *See* Ariz. R. Crim. P. 31.23(a) (providing for issuance of mandates only by Arizona Court of Appeals and Arizona Supreme Court).   This is consistent with the Comments to the 2000 Amendments to Rule 32.4 adopted in response to *Pruett* and related cases, indicating the "rule is amended to allow the pleading defendant thirty days within which to file a second notice if the defendant seeks to challenge counsel's effectiveness in the Rule 32 of-right proceeding."   Where no review is sought, that thirty days could only be calculated to run from the PCR court's order.   *See e.g. State v. Valenzuela,* 2014 WL 1569499, at *1 (Ariz. Ct. App. Apr. 18, 2014) (unpublished decision calculating Rule 32.4(a) deadline from unreviewed PCR court order);

Thus, having not properly sought further review of his first PCR proceeding, Petitioner's second PCR notice was due within 35 days (including the five days for mailing under Ariz. R. Crim. P. 1.3(a)) after the trial court's ruling on July 7, 2010. Thus, Petitioner had through Wednesday, August 11, 2010 to commence his second PCR proceeding.   Even if treated as filed as of its signature date of September 24, 2010, Petitioner's second PCR proceeding was too late to timely assert a claim of ineffective assistance of PCR counsel in his first PCR proceeding.

Accordingly, Petitioner is not entitled to statutory tolling for the pendency of his second PCR proceeding.

**4.  Equitable Tolling**

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'"   *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The

12

> petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted).  "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' " *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002)  (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.).  Petitioner bears the burden of proof on the existence of cause for equitable tolling.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Petitioner argues in his Reply that he is untrained in the law, is reliant upon other inmates, had no access to case law or other assistance, and speaks no English.  (Reply, Doc. 15 at 2.)  He further argues that the misapplication of the state time limit on PCR petitions justifies equitable tolling.  (*Id.* at 10-13.)

**Pro Se Status** - "It is clear that *pro se* status, on its own, is not enough to warrant equitable tolling." *Roy v. Lampert,*  465 F.3d 964, 970 (9th Cir. 2006).  A prisoner's "proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim." *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000).  *See also Rasberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir. 2006) ("a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling").

**Ineffective Assistance** – To the extent that Petitioner might suggest that his situation was altered because of PCR counsel's failure to raise his claims of ineffective assistance of trial counsel in his first PCR proceeding, such ineffectiveness would not constitute grounds for equitable tolling.

Although an attorney's behavior can establish the extraordinary circumstances required for equitable tolling, mere negligence or professional malpractice is insufficient.

*Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir.2001). For example, a "garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline does not warrant equitable tolling.' " *Holland v. Florida*, 560 U.S. 631, 651-652 (2010). Rather, the attorney's misconduct must rise to the level of extraordinary circumstances. *Id. See e.g. Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003) (allowing equitable tolling where petitioner's counsel was hired almost a year in advance, failed to do anything to prepare the petition or to respond to numerous letters and phone calls, and withheld petitioner's file for over two months after the limitations period expired); *Holland, supra* (discussing potential for finding of extraordinary circumstances where counsel misinformed petitioner about filing deadline, failed to communicate conclusion of state appeals, and failed to communicate with petitioner at all over a period of years, all despite repeated requests by petitioner).

Here, Petitioner suggests no such level of abandonment, but simply complains that PCR counsel failed to pursue claims Petitioner believed had merit but which counsel did not. Even assuming Petitioner's proposed claims had merit, counsel's refusal to bring them based upon a determination that they were without merit was at best routine malpractice.

The Supreme Court's decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) is inapplicable to this equitable tolling determination. In *Martinez*, the Court held that ineffective assistance of PCR counsel in failing to bring a claim of ineffective assistance of trial counsel could, in some circumstances, constitute cause to excuse a procedural default and failure to properly exhaust such a claim. *Martinez* was founded upon the recognition that in many states a PCR proceeding was the first opportunity to assert a claim of ineffectiveness of trial counsel, and thus despite the existence of a constitutional right to PCR counsel the ineffectiveness of such counsel could justify a failure to exhaust state remedies on such a claim.

Here, Petitioner is not being faulted for failing to exhaust his state remedies, but for filing too late. The issue is not whether Petitioner properly exhausted his state

14

remedies, but whether extraordinary circumstances precluded him from filing a timely federal habeas petition. A petitioner may be dependent upon PCR counsel to exhaust his state remedies on such a claim, but is not dependent upon PCR counsel for filing a timely federal petition.

And, while Petitioner was required to exhaust his state remedies, the failing of PCR counsel did not preclude a timely habeas filing. Indeed, in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Supreme Court analyzed the potential catch-22 between the habeas limitations period and the exhaustion requirement, where a state petitioner has filed a state post-conviction relief proceeding which may ultimately be deemed untimely, thus not properly filed, and resulting in the expiration of his habeas limitations period. "A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Id.* at 416. Petitioner proffers no reason why this avenue was not available to him once PCR counsel refused to raise his claims.

Moreover, Petitioner did (at least to some extent) assert his claims of ineffective assistance of trial counsel in his *pro per* PCR petition (Exhibit M).

Further, any ineffectiveness of PCR counsel would not justify equitable tolling because, under the assumptions and analysis applied herein, Petitioner's statute of limitations did not begin to run until after the completion of his first PCR proceeding. Thus, any ineffectiveness of PCR counsel would not have been the cause of Petitioner's failure to timely file within the ensuing one year.

Finally, to the extent that Petitioner might rely upon *Martinez* as justification for his delaying to pursue his second PCR proceeding to assert PCR counsel's ineffectiveness, *Martinez* would be inapposite. *Martinez* explicitly declined to find that the ineffectiveness of PCR counsel constituted an independent constitutional violation. 132 S.Ct. at 1315 ("This is not the case, however, to resolve whether that exception exists as a constitutional matter."). Thus, *Martinez* provided no authority for asserting

such a claim other than as cause to excuse a procedural default.  Moreover, such right would not justify Petitioner's failure to pursue those proceedings on a timely basis, or to promptly pursue his federal petition upon discovering that he had been untimely.

**Reliance on Inmates** - Petitioner's reliance upon other inmates suggests not that he was unable to file on a timely basis, but that with their assistance, he could have done so.  Petitioner does not, for example, suggest that he was dependent upon such assistance but was denied it at a time that rendered a timely federal filing impossible.  To the contrary, he continued to file in the state courts through the running of his habeas limitations period.

**Limited Legal Resources** - This circuit has found that a lack of access to legal resources may be an extraordinary circumstance warranting equitable tolling. *See e.g. Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (*en banc*) (finding that unavailability of a copy of the AEDPA in a prison law library could be grounds for equitable tolling). However, in cases where courts have found that an extraordinary circumstance might exist, the petitioner always pointed to specific materials to which he did not have access. *See e.g. Roy v. Lampert*, 465 F.3d 964, 974 (9th Cir. 2006) (finding that lack of access to AEDPA materials and Oregon law books may be an extraordinary circumstance).  Here, Petitioner simply offers the conclusory complaint that he had no (or limited) access to case law, but does not suggest how that kept him from filing a timely habeas petition.  Further, the state filings show that Petitioner had long possessed the legal resources necessary to assert the claims he raises in this habeas proceeding.

**Language** - "Lack of English proficiency can constitute an extraordinary circumstance for equitable tolling purposes, but only when the petitioner is unable to procure legal materials in his own language or to obtain translation assistance."  *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir.) *cert. denied sub nom. Yow Ming Yeh v. Biter*, 135 S. Ct. 486 (2014).  The Ninth Circuit has held that "a non-English-speaking petitioner seeking equitable tolling must, *at a minimum*, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure

16

either legal materials in his own language or translation assistance from an inmate, library personnel, or other source." *Mendoza v. Carey*, 449 F.3d 1065, 1070 (9th Cir. 2006) (emphasis added). Indeed, without the specific showing mandated in *Mendoza*, a large percentage of the prison population in Arizona would be entitled to automatic equitable tolling. Here, Petitioner makes no suggestion that he was unable to obtain translation assistance, whatever his language limitations may be. Moreover, the record of Petitioner's post-conviction filings suggests that he has regularly had substantial assistance in his filings.

**Error in Dismissing Petition for Review** – Petitioner argues that he is entitled to equitable tolling because his Petition for Review in his first PCR proceeding was erroneously dismissed as untimely. As discussed hereinabove, the undersigned has concluded that the dismissal was not in error.

Assuming *arguendo* that the dismissal was erroneous, Petitioner fails to show how this error resulted in his untimely habeas petition. Petitioner was aware of the dismissal soon enough after the dismissal to file his 2nd PCR proceeding. Instead of promptly pursuing his federal petition, Petitioner pressed on with his second PCR proceeding, and continued to do so even after that proceeding was dismissed as untimely.

Even if extraordinary circumstances prevent a petitioner from filing for a time, equitable tolling will not apply if he does not continue to diligently pursue filing afterwards. "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2nd Cir. 2000).

Here, Petitioner was not duped into wasting away his one year limitations period by a delayed and erroneous ruling. Rather, that ruling was issued less than a month after Petitioner filed his Petition for review, and only days after his limitations period began to

run.  Further, Petitioner has known since September, 2010 of such error and yet delayed bringing his federal habeas petition for over three years.

**Error in Dismissal of 2nd PCR** - Finally, for the reasons discussed hereinabove in connection with statutory tolling, Petitioner fails to show that his second PCR proceeding was timely.  Arguably, the PCR court did misapprehend Petitioner's claim as asserting solely a claim of ineffective assistance of trial counsel, rather than a claim of ineffective assistance of counsel in his first PCR proceeding, and misapplied the normal limitations period which would have functionally required such claims have been brought in his first PCR proceeding.

However, even if such a misapplication had occurred, Petitioner fails to show why he could not have timely filed his federal petition upon learning of such error.  As with the purportedly erroneous dismissal of his Petition for Review in his first PCR proceeding, Petitioner's failure to promptly pursue his federal habeas petition after learning of the erroneous ruling showed a lack of diligence, and breaks the causation between the erroneous ruling and the untimeliness of the instant petition.  In this instance, Petitioner had known of the dismissal as untimely of his second PCR proceeding since October, 2010, and yet he did not commence his federal habeas until over three years later, in December 2013.

It is true that Petitioner was obligated to exhaust his state remedies on his habeas claims.  But he could have filed his federal habeas petition and sought to stay it while he continued to challenge the dismissal of his second PCR proceeding in the state courts to complete the exhaustion of his state remedies.  Indeed, in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Supreme Court analyzed the potential catch-22 between the habeas limitations period and the exhaustion requirement, where a state petitioner has filed a state post-conviction relief proceeding which may ultimately be deemed untimely, thus not properly filed, and resulting in the expiration of his habeas limitations period.  "A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey

18

the federal habeas proceedings until state remedies are exhausted." *Id.* at 416. Petitioner proffers no reason why this avenue was not available to him.

Accordingly, Petitioner has failed to proffer a basis for equitable tolling.

## 5.  Actual Innocence

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013).  To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' " *Id.*  at 1936 (quoting *Schlup,* 513 U.S. at 316).

Petitioner makes no such claim of actual innocence in this proceeding.  To the extent that Petitioner has previously argued his innocence, he makes no offering in this proceeding of new evidence to support that claim.

## 6.  Summary re Statute of Limitations

Proceeding under the assumption that his petition for review in his first PCR proceeding was timely and delayed the finality of his judgment, and taking into account the available statutory tolling (albeit there was none), Petitioner's one year habeas limitations period commenced running no later than October 9, 2010, and expired no later than October 11, 2011, making even his original Petition filed December 6, 2013 (Doc. 1) over two years delinquent and his First Amended Petition filed April 2, 2014 (Doc. 6) over two and one half years delinquent. Petitioner has shown no basis for

19

equitable tolling or actual innocence to avoid the effects of his delay.  Consequently, the Petition must be dismissed with prejudice.

## B.  OTHER DEFENSES

Respondents also assert defenses of procedural default, and lack of merit. (Answer, Doc. 14 at 20, *et seq.*)  Because the undersigned finds the Petition plainly barred by the habeas limitations period, these other defenses are not reached.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it

debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds. Under the reasoning set forth herein, reasonable jurists would not find it debatable whether the district court was correct in its procedural ruling.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's First Amended Petition for Writ of Habeas Corpus, filed April 2, 2014 (Doc. 6) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a

party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: January 14, 2015

_____
James F. Metcalf
United States Magistrate Judge

13-2488r RR 14 12 11 on HC.docx

22