**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alfredo Camargo, | No. CV-13-02488-PHX-NVW |
| Petitioner, | |
| v. | **ORDER** |
| David Shinn and the Attorney General of the State of Arizona, | |
| Respondents. | |

Before the Court is the Report & Recommendation ("R&R") of Magistrate Judge James F. Metcalf (Doc. 114) regarding Petitioner Alfredo Camargo's ("Camargo") Renewed Second Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. 83) and Renewed Motion for Expansion of the Record and an Evidentiary Hearing (Doc. 107). The R&R recommends that the Court deny relief on all Camargo's claims except that he "has asserted colorable claims in Grounds 1 (irreconcilable conflict [with appointed counsel]) and 2(A) (IAC PCR counsel re Ground 1), and should be permitted to expand the record and an evidentiary hearing to support these claims." (Doc. 114 at 59.) The Magistrate Judge advised the parties that they had fourteen days to file objections to the R&R. (Doc. 114 at 63 (citing Fed. R. Civ. P. 72(b); Rules Governing Section 2254 Cases in the United States District Courts, Rule 8(b)).) Camargo and Respondents David Shinn and the Attorney General of the State of Arizona ("Respondents") each timely filed objections, (Doc. 119; *see* Docs. 120-21, 125-26), and

responses thereto.  (Docs. 124, 128.)  In addition, Camargo filed a Notice of Supplemental Authority (Doc. 129) on March 10, 2020, to which Respondents responded ten days later. (Doc. 130.)

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  The Court has considered the objections and responses thereto and reviewed the R&R de novo.  *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1) (stating that a court must make a de novo determination of those portions of a report and recommendation to which specific objections are made).

## I.    INTRODUCTION

The record shows the Superior Court of Arizona in and for Maricopa County (the "Superior Court") rejected on the merits Camargo's claim of constructive denial of counsel and did not violate settled Supreme Court precedent in so ruling.  The Magistrate Judge erred in not according deference to the Superior Court's legal conclusions and findings of fact.  There was not and could not have been any ineffective assistance of Camargo's post-conviction relief counsel in not raising that unmeritorious claim.  The mistaken recommendation to supplement the record is contrary to the requirement that this federal habeas corpus proceeding be judged based on the record before the Superior Court.  The R&R compounds those errors by grounding its recommendations in lower court authorities, not just Supreme Court precedents.  By that chain of errors, the Magistrate Judge reached a recommendation plainly contrary to 28 U.S.C. § 2254 and the well-supported findings of the Superior Court.

Therefore, the R&R will be rejected to the extent it does not deny Camargo's claim of constructive denial of counsel and his claim of ineffective assistance of his post-conviction relief counsel on that issue.  The R&R will be accepted to the extent it recommends rejection of all Camargo's other claims.  Judgment will be entered denying Camargo's Petition.

The R&R's tangled discussion of procedural issues and sub-issues may not be necessary in every detail.  This Court prefers to untangle the central matter: Camargo's claim that his Sixth Amendment rights were violated as a result of the Superior Court denying his motions for change of counsel.

## II.    THE SUPERIOR COURT PROCEEDINGS

Camargo twice moved for new counsel; the Superior Court heard the first motion on November 13, 2007, and the second on March 20, 2008.

### A.    The First Motion

Camargo first moved for new counsel on November 2, 2007,[1] arguing that his court-appointed attorney, Raymond Kimble, should be dismissed because he: (1) "refuses to hire an investigator to gather exculpatory evidence needed to challenge police officers['] false testimony;" (2) "refuses to provide simple police reports after being asked twice throughout [the] last couple of months;" and (3) "is only interested in bullying [Camargo] into signing a plea instead of allowing [him] to participate as co-counsel, refusing to develop trial strategy, refusing to discuss facts of [the] case, refusing to conduct interviews."  (Doc. 83-2 at 125-27.)

On November 13, 2007, the Superior Court held a hearing on the motion.  (*Id.* at 107.)  The Superior Court judge began by telling Camargo "the law does not permit him to act as co-counsel."  (*Id.* at 110.)  Then, she addressed the arguments in Camargo's motion.  On Camargo's first argument, the judge surmised that "it's up to the defense to determine whether or not investigation is needed and I'm certainly not going to intervene" and that "[t]he issue then is whether or not an investigator would be approved."  (*Id.*)  Then, she asked Kimble whether he had "requested an investigator or [felt that] one is necessary."  (*Id.*)  Kimble said he had not requested one and said "I did meet with Mr. Camargo at the

---

[1] Camargo initially tried to present his motion at a status conference held before a court commissioner on October 23, 2007.  (*See id.* at 98, 100.)  Commissioner Julie P. Newell forwarded the motion to Superior Court Judge Linda A. Akers.  (*See id.* at 102, 105, 215.)  In contrast with Federal Rule of Criminal Procedure 11, Arizona criminal procedure does not prohibit judges from participating in plea discussions.

jail with an interpreter prior to our scheduled settlement conference."  He and Camargo "didn't even discuss an investigator," and he therefore "never actually refused to hire one." (See *id.* at 111.)  He concluded that "[g]iven the facts of this case[,] I don't plan to [hire an investigator] because I don't believe one is necessary" and noted "this case . . . basically involves a couple of civilian witnesses and three or four or five police officers."  (*Id.*) Notably, Camargo never said what investigation he wanted or why it was necessary.

Turning to Camargo's second argument, the Superior Court asked Kimble whether he gave Camargo the police reports.  He said Camargo "has a copy of the police report." (*Id.*)  Camargo then confirmed this.  (*Id.*)

The Superior Court next addressed Camargo's third argument.

> THE COURT: . . . There is a plea agreement, where there was a plea offer; is that correct?
>
> MR. KIMBLE: Judge, there was a plea offer that was made.  I conveyed that plea offer to Mr. Camargo with an interpreter.  I also discussed the facts of the case with Mr. Camargo during that visit.  I listened to his version of the incident and frankly I gave him my advice that I thought the plea offer was in his best interest.
>
> THE COURT: But you're willing to try the case if he wants to.
>
> MR. KIMBLE: If he wants a trial, that's fine, Your Honor.

(*Id.* at 111-12.)

The Superior Court then turned to the crux of the matter, asking Kimble whether "there is an irreconcilable difference" between him and Camargo.  (*Id.* at 112.)  He responded:

> From my perspective, I believe that Mr. Camargo, number one, in his motions or letters to the Court have been less than truthful.  During our last status conference he expressed an unwillingness to communicate with me which obviously would make it very difficult to defend him at trial, discuss the facts of the case with him, potential defenses, his version of the incident, things like that.  He has expressed a distrust regarding my representation.  I do believe that I could competently represent him at trial however at the same time I have had difficulties working with Mr. Camargo and I guess if he wants to express his feelings to the Court.  I'd advise him not to make any statements regarding the facts of the case.  That's where we stand right now.

I just—Judge I don't agree with what he has written to the court and I'd like to put that on the record.

(*Id.* at 112-13.)

But this did not end the Superior Court's inquiry, as it next sought Camargo's side of the story.  Camargo asserted:

I don't agree with him because from the very beginning, he went to visit me. He read me the charges and he explained to me the plea agreement.  And I didn't see him again until the day that he told me, you have to sign, time's up; if not, you're going to have to . . . go to trial.  And in my opinion I think that he as an attorney should have warned me—informed me so that I could have made a decision.  I asked him for the police report but he didn't give it to me until the day before the plea agreement was going to expire and the day before I was going to supposedly have to sign it.  And the day that he brought me the police report at the jail he asked me if I had any questions, well of course I had questions but how was I going to be able to ask him all of those questions that day without an interpreter when he came. Supposedly, him, as an attorney he should have come with an interpreter.  I feel like I'm being pushed, like I'm being pressured to sign.  And I read the Police Report and there are a lot of lies.  It's clear they are lies.  That's why I want an investigator to check into it to show what that it's lies in the police report.

(*Id.* at 113-14.)  Camargo did not identify any "lies" in the police report.  After the courtroom interpreter said she once went to the jail to interpret for Kimble and Camargo, Kimble provided more information, noting:

Judge we had a settlement conference on a Thursday afternoon because it ran into 4:30 or so PM—I believe it was a Thursday or Friday but Commissioner Newell continued the settlement conference for a status conference the following week.  Ms. Luder [the prosecutor] allowed the plea to remain open for three or four days following the settlement conference.  I delivered a copy of the police report to Mr. Camargo the next day.  I had mailed a copy to him and not sure why it didn't make it to him, to the jail.  But I delivered a copy the next day to him.  I didn't have time to arrange a visit for the interpreter but in order to give him a copy of the police report I hand delivered it to him. Obviously I couldn't communicate well with him because I don't speak Spanish.  But he had the opportunity to consider the plea offer for some time.

(*Id.* at 114-15.)

The Superior Court then conducted the following analysis:

Well Defendant doesn't have to take a plea offer if he doesn't want to.  He can certainly go to trial.  That's what we're in the business of providing.  What I have to look at here Mr. Camargo and Counsel, you know as well, is whether there is an irreconcilable conflict between Counsel and accused.  It appears to me that the same conflict is going to exist whether or not the Defendant is represented by Mr. Kimble or someone else.  Defendant feels that an investigator needs to be appointed.  I've examined the facts and I don't know whether or not an investigator would be appropriate based on what the Defendant's thoughts are.  I don't want to get into case preparation for strategy here but there is access available to an investigator should one be needed.  I have to consider whether new Counsel would be confronted with the same conflicts.  I think that Defendant[']s ideas about the case may be in conflict with anyone who represented him.  Defendant is not entitled to an attorney of his choice when he receives representation at the cost or expense of the state.  And so if Defendant wishes to hire his own attorney he maybe [sic] able to dictate who that would be but not in this case.  I have to look at the timing of the motion.  The motion is filed about three weeks before trial.  We have both a trial management conference and a trial on the same day.  That is unusual.  I will adjust for that.  The trial is set for December the 4th and that is about two weeks out, maybe just a little bit better than that, maybe it's about three weeks out.  I have not heard anything about the convenience of witnesses. . . .  [The prosecutor then said that "[s]o far as the witnesses go they are available for trial in December." (*Id.* at 116.)]  The next one I have to consider is the time elapsed between the alleged offense and the trial; the proclivity of the Defendant to change Counsel.  I guess this is the first motion that has been filed, so there is no history there.  And the quality of Counsel.  And I certainly am aware Mr. Kimble has appeared in this court many times and provided certainly quality representation.  So I don't feel that is an issue in this case.

(*Id.* at 115-17.)

After Kimble detailed his progress in his pretrial investigation, Camargo argued "I don't want him [Kimble] to represent me anymore."  (*Id.* at 117.)  The Superior Court explained that "[w]hen the state provides you with an attorney you don't get to pick and choose which attorney will be your attorney."  (*Id.* at 117-18.)  The following exchange then occurred:

THE INTERPRETER:[2] Okay.  But if we can't come to an agreement—he's pushing me trying to make me sign.

---

[2] Camargo spoke through an interpreter at the hearing; dialogue in the transcript is erroneously attributed to "the interpreter."

THE COURT: You don't have to sign any agreement sir. I can tell you that right now. You can go to trial and you can be tried on the charges and Mr. Kimble has indicated that he will prepare for trial and represent you at that trial.

THE INTERPRETER: No. I don't want him to represent me. We can't reach an agreement, him and I. He doesn't even come to visit me to tell me what's going on so I can make a decision or anything. He's pushing. I can't come to an agreement with him.

(*Id.* at 118.) After Kimble and the prosecutor informed the Superior Court there was no plea offer pending, Camargo acknowledged that fact. (*Id.* at 118-19.) But then he pressed on:

THE INTERPRETER: Yes, but they only gave me an extension, a two day extension after they told me that. And it was not enough time for me to be able to make a decision.

THE COURT: Well Mr. Camargo, you're not entitled to a plea in any case. The law says that whatever plea is extended is not going to be there forever and you don't have to take it. The State didn't have to offer it in the first place. You had a settlement conference. You were given additional time to discuss it. I think any new attorney is going to be faced with the same problems.

THE INTERPRETER: But I can't even talk to him. He doesn't even come to visit me to tell me what's going on. I don't know anything. He hasn't even investigated about an injury that I had there and about the door, there's fingerprints. If my fingerprints are on the door, they haven't even checked that. I never went in. That's what I'm saying is, with the police report, there are a lot of lies, a lot of things that are not true that needs to be investigated. They are just accusing me.

(*Id.* at 119-20.)

Camargo then went on to discuss the facts of the case, at which point the Superior Court judge cut him off to prevent him from potentially incriminating himself. (*See id.* at 120.) The Superior Court then denied Camargo's motion and "admonish[ed] Mr. Kimble to visit [Camargo] more frequently than he has with the interpreter present so that [Camargo] can go over the facts of the case." (*Id.*)

Camargo then argued his motion one last time, saying "I don't want him [Kimble]" and "he's not doing anything to investigate something that's just lies." (*Id.* at 120.) Then, the Superior Court asked Camargo whether he wished to represent himself, Camargo declined, and the Superior Court reaffirmed that Camargo's motion was denied and Kimble was his appointed counsel. (*Id.* at 121.)

## B.    The Second Motion

Camargo next moved for new counsel on February 29, 2008, arguing that Kimble should be dismissed because Kimble: (1) told him to "stay quiet" after he "noticed" the prosecutor "lied to the judge" during a settlement conference on February 11, 2008; (2) "failed to look into" his contention that all of the "testimonys [sic]" in the police report "don't match at all;" (3) refused "to hire an investigator to gather exculpatory evidence needed to challenge police officers['] false testimony;" and (4) "is only interested in bullying [him] into signing a plea instead of allowing [him] to participate as co-counsel, refusing to develop trial strategy, refusing to discuss facts of [the] case, refusing to conduct interviews." (*Id.* at 186-87.)

The motion was heard on March 20, 2008. (*Id.* at 213.) The Superior Court began by asking Camargo whether he wished to supplement his motion; he declined. (*Id.* at 217-18.) Next, to "try[] to understand how" Camargo believed there was a "conflict with this attorney [Kimble] that would not exist with another attorney who had the same responsibility to" him, the Superior Court let Camargo argue his motion. (*Id.* at 218.) The following exchange ensued:

> THE COURT: Well, I am giving you an opportunity to explain to me how another attorney could work better with you, given the fact that one of your allegations is that this attorney refuses to allow you to participate as co-counsel, and you can't do that under the law of Arizona. So any other attorney would be faced with the same issue. You'd have the same issue with that attorney.
>
> THE DEFENDANT: This attorney hasn't done his job. He hasn't sent out an investigator, and he hasn't negotiated or argued this case with . . . .

THE COURT: Negotiated or argued the case with who?  There's been no trial, as I've understood it.

THE DEFENDANT: Okay, well, with this lawyer, I mean—all right, on the 29th of February there was a settlement conference.

THE COURT: All right.

THE DEFENDANT: And Ms. Susan spoke certain things that were lies. They're not written in the police report.  It changes the victim's statements, and that victim is not here.  I found out what she said, and I tried to say something about it, and Mr. Raymond [Kimble] would tell me, you know, hey—he wouldn't let me talk.  And if I feel that he's not speaking on my behalf, then I have to . . . . So the report is here, so that you can see it.  It's recorded, what she said.

THE COURT: Sir, let me interrupt you right there.  A settlement conference is not an opportunity to try the case.  You may differ with what the State believes the evidence will be.

THE DEFENDANT: So then you are agreeable to the lady here saying lies?

THE COURT: I'm not saying she lied, one way or the other.  The point of the matter is, a settlement conference is not an opportunity to litigate the facts.  It's an opportunity to determine if you and the State can reach a determina—an agreement as to how the case would be resolved short of trial.

THE DEFENDANT: Well, since that was not the first time that Mr. Raymond has told me to be quiet when something like that happens, that is the reason why I'm asking for another attorney.

THE COURT: All right.  I now understand the basis for your request.

(*Id.* at 218-20.)

The Superior Court then turned to Kimble.  While Kimble acknowledged that "[d]uring at least two of the settlement conferences, I did tell Mr. Camargo to be quiet," he noted he did so "only because he was going to discuss certain facts regarding the case that would obviously pose a problem should this case go to trial and Mr. Camargo testify at trial."  (*Id.* at 220.)  He then explained the case was "based primarily upon the testimony of two victims who have invoked their rights as victims" under Arizona law not to be

interviewed.  (*Id.*)  He mentioned he was able to interview a police officer, who was "basically the only other essential witness in this case." (*Id.*)

Kimble further explained that he had spoken with Camargo "at least five times at the jail" and he "explained the plea offer to him as well as his sentencing ranges on every single occasion, as well as during the three settlement conferences." (*Id.* at 221.)  He also noted he didn't see the need to hire an investigator, as Camargo "didn't mention any defense witnesses whatsoever that needed to be located or interviewed." (*Id.*)  When asked by the Superior Court whether his relationship with Camargo was "irreconcilably conflicted," Kimble said:

> Judge, I think there is a problem with my relationship with Mr. Camargo. During the last two visits at the jail, I've been unable to discuss the case with him.  His only comments to me were that he didn't want to discuss anything, he wants a new attorney.  Obviously, that presents a problem with respect to my representation of him only because I need to discuss the case with him in order to prepare for trial.
>
> In that regard, I think we do have some irreconcilable differences, especially given the amount of time Mr. Camargo faces if he would be convicted at trial.

(*Id.* at 221-222.)

When asked by the Superior Court whether "new counsel would have the very same conflict," Kimble responded that "given the severity of the case and the time he is facing, I think it may be in Mr. Camargo's best interests to have new counsel just take a fresh look and a fresh start with him.  I can't say whether or not they'll have the same conflicts." (*Id.* at 222.)  The Superior Court inquired further:

> THE COURT: Well, his issue is that you didn't try the case at the settlement conference—
>
> MR. KIMBLE: Right.
>
> THE COURT: —apparently, you haven't hired an investigator, and you've explained that there's really nothing to investigate, and that you're refusing to allow him to act as company counsel, which you cannot do under the law. Wouldn't a new attorney have the very same case conflict?

MR. KIMBLE: Well, I think a new attorney would probably take the same position I have.

(*Id.* at 222-23.)

A few moments later, the Superior Court denied Camargo's motion, ruling:

I'm going to deny the request. It's a motion to dismiss Mr. Kimble as counsel. I do find that there may be differences of opinions between the defendant and his attorney. However, Mr. Camargo was under the assumption that he could get a new attorney. He cannot at this point. New counsel would be confronted with the very same conflicts that have been expressed in this motion.

The timing of the motion; this is four days before the trial date. I don't know whether or not witnesses would be inconvenienced one way or another. I have not heard any evidence on that. And the time elapsed between the alleged offense and the trial, obviously, we are at the very last portion of that time period, inasmuch as trial is four days away.

I have no idea whether defendant has a proclivity to file these motions. This is the first one to come before me, and Mr. Kimble is certainly qualified to represent the defendant in a serious matter.

(*Id.* at 223-24.)

Kimble and the prosecutor then noted Camargo's earlier motion, which the Superior Court had denied. (*Id.* at 224-25.) In acknowledging this fact, the Superior Court recalled that the motion involved "the very same allegations, I think, with the exception of the police records," which Camargo had since acquired. (*See id.* at 225.)

## III.   THE PETITION FOR A WRIT OF HABEAS CORPUS

### A.   Constructive Denial of Counsel (Ground 1)

Because the Superior Court ruled on the merits of Camargo's motions, the Superior Court's rulings are entitled to deference under 28 U.S.C. § 2254(d). And because those rulings are well-supported by the record and not contrary to clearly established federal law, Camargo's constructive denial of counsel claim is baseless.

#### 1.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus seeking relief from a state court's judgment "shall

- 11 -

not be granted with respect to any claim that was adjudicated on the merits in State court"
unless it (1) "resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme Court of the
United States" or (2) "resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State court proceeding."
28 U.S.C. § 2254(d).  A claim "as used in 28 U.S.C. § 2254 [is] 'an asserted federal basis
for relief from a state court's judgment of conviction.'"  *Kirkpatrick v. Chappell*, 950 F.3d
1118, 1131 (9th Cir. 2020) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 530 (2005)),
*petition for cert. docketed*, 20-5089 (July 16, 2020).  An adjudication on the merits is "'a
decision finally resolving the parties' claims that is based on the substance of the claim
advanced, rather than on a procedural, or other, ground.'"  *Lambert v. Blodgett*, 393 F.3d
943, 969 (9th Cir. 2004) (internal alteration omitted) (quoting *Sellan v. Kuhlman*, 261 F.3d
303, 311 (2d Cir. 2001)).  As the Superior Court's rulings substantively resolved
Camargo's claim,[3] they constitute "adjucat[ions] on the merits" and must be afforded
deference under 28 U.S.C. § 2254(d).  *See Ayala v. Chappell*, 829 F.3d 1081, 1094 (9th
Cir. 2016) ("AEDPA's standards [are applied] to the state court's last reasoned decision on
the merits of a petitioner's claims." (citing *Edwards v. Lamarque*, 475 F.3d 1121, 1126
(9th Cir. 2007) (en banc))); *see also Ramsey v. Yearwood*, 231 F. App'x 623, 624-25 (9th
Cir. May 3, 2007) ("Because the California Supreme Court denied Ramsey's petition
without comment or citation, and the California Court of Appeal denied his petition on
procedural grounds, the California Superior Court's finding that Ramsey's habeas petition
failed to state a prima facie claim is the last reasoned decision on the merits. Therefore,
under AEDPA, we are required to defer to the Superior Court's determination." (internal
alteration and quotation marks omitted)).

    "Section 2254(d) is part of the basic structure of federal habeas jurisdiction,
designed to confirm that state courts are the principal forum for asserting constitutional
challenges to state convictions."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  Indeed,

---

[3] *See supra*, at section II.

"AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). In light of this principle, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.* Consequently, "28 U.S.C. § 2254(d) requires 'highly deferential' review of state court adjudications, 'demanding that state-court decisions be given the benefit of the doubt.'" *Cook v. Kernan*, 948 F.3d 952, 965 (9th Cir. 2020) (internal alteration omitted) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

"The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) have independent meaning." *Id.* (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court's ruling is "contrary to" clearly established Supreme Court law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent." *Williams*, 529 U.S. at 405-06.

A state court's ruling is an "unreasonable application" of clearly established Supreme Court law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. "'The unreasonable application clause requires the state court decision to be more than incorrect or erroneous'; it must be 'objectively unreasonable.'" *Cook*, 948 F.3d at 965 (internal quotation marks omitted) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102 (internal citation omitted). Accordingly, to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

With regard to claims under § 2254(d)(2), "a state court's factual determination is not 'unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Cook*, 943 F.3d at 965-66 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "Even if 'reasonable minds reviewing the record might disagree' about a factual finding, 'on habeas review that does not suffice to supersede' the state court's determination." *Id.* at 966 (internal alteration omitted) (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)).

In summary, AEDPA creates a standard that is "intentionally difficult to meet," *see Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (internal quotation marks and citations omitted), as "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Therefore, this Court "will not lightly conclude that [Arizona's] criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." *See Burt*, 571 U.S. at 20 (internal alteration, quotation marks, and citation omitted).

## 2. Discussion

First, Camargo's claim of constructive denial of counsel is not supported by the record and accordingly is not colorable. While the record demonstrates there was less communication between Camargo and Kimble than there might have been, this was the result of Camargo refusing to speak with Kimble. (*See* Doc. 83-2 at 112-13 ("During our last status conference he [Camargo] expressed an unwillingness to communicate with me [Kimble] which obviously would make it very difficult to defend him at trial, discuss the facts of the case with him, potential defenses, his version of the incident, things like that. He has expressed a distrust regarding my representation.").) While Kimble was charged with effectively representing Camargo, Camargo was charged with communicating with his lawyer and assisting with his defense. Notwithstanding Camargo's recalcitrance, there

is no evidence Kimble's representation was ineffective.  Kimble testified that he "could competently represent [Camargo] at trial."  (*Id.* at 112.)  Camargo was not entitled to a new lawyer simply because he refused to discuss his case with Kimble and sought replacement counsel.  (*See id.* at 221-22 ("During the last two visits at the jail, I've [Kimble] been unable to discuss the case with [Camargo].  His only comments to me were that he didn't want to discuss anything, he wants a new attorney.").)  The Magistrate Judge's conclusion that Camargo's claim is colorable disregards the Superior Court record.

Moreover, contrary to the Magistrate Judge's characterization, there was no "breakdown in communications."  Indeed, Kimble noted in March 2008 that he had spoken with Camargo "at least five times at the jail" and he "explained the plea offer to him as well as his sentencing ranges on every single occasion, as well as during the three settlement conferences."  (*Id.* at 221.)  In addition, they "discussed" Camargo's plea offer during the third settlement conference a month prior.  (*Id.* at 169, 181.)

The Magistrate Judge also concluded "[t]here seems to have been little inquiry by the trial court."  (Doc. 114 at 37.)  This is nonsense.  The Superior Court held two hearings on Camargo's motions and extensively examined Camargo's claims at each of them.  Indeed, both Camargo and Kimble were given ample opportunities to explain their positions, (*see, e.g.*, Doc. 83-2 at 112-14, 218-22), and Judge Akers, at each hearing, explicitly referenced the "several factors designed specifically to balance the rights and interests of the defendant against the public interest in judicial economy, efficiency and fairness" the Arizona Supreme Court has directed courts to evaluate "when considering a motion to substitute counsel."  (*See* Doc. 83-2 at 115-17, 223-25.)  *See State v. Cromwell*, 211 Ariz. 181, 187 ¶ 31, 119 P.3d 448, 454 (2005) (en banc) (internal citations omitted).[4]  There is no evidence the Superior Court's inquiry was anything less than thorough.

_____

[4] These factors are:

[W]hether an irreconcilable conflict exists between counsel and the accused, and whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of the defendant

Second, even if Camargo's claim of constructive denial of counsel were supported by the record, it would still fail, as it is not supported by clearly established Supreme Court law. As the Ninth Circuit recently explained:

> Even if [the petitioner] were successfully able to demonstrate a complete breakdown in communication or prove that an irreconcilable conflict existed . . . [his] irreconcilable-conflict claim would still fail. This is because the Supreme Court has never endorsed this line of precedent from our court. It has never held that an irreconcilable conflict with one's attorney constitutes a per se denial of the right to effective counsel. This proves fatal to [the petitioner's] claim because AEDPA conditions habeas relief on a determination that the state-court decision unreasonably applied "clearly established Federal law" as pronounced by the U.S. Supreme Court. 28 U.S.C. § 2254(d)(1); *Williams* [*v. Taylor*], 529 U.S. [362,] [] 365 [2000], 120 S. Ct. 1495. Although we may look to our circuit's precedent to see if we have already held a rule is clearly established, our decisions may not "be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64, 133 S. Ct. 1446, 185 L.Ed.2d 540 (2013) (per curiam). [The petitioner] does not cite to any Supreme Court case holding that an irreconcilable conflict between a lawyer and his client constitutes a constructive denial of his right to counsel, with no showing of prejudice required.

*Carter v. Davis*, 946 F.3d 489, 508 (9th Cir. 2019) (per curiam) (internal citation omitted). This explanation tracks the Ninth Circuit's longstanding understanding that Supreme Court precedent does not "stand[] for the proposition that the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust." *See Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc) ("The Supreme Court has held that a defendant is entitled to counsel who 'function[s] in the active role of an advocate.' [Petitioner] has not demonstrated that his attorneys failed to satisfy this obligation or acted unreasonably in the *Strickland* sense." (quoting *Entsminger v. Iowa*, 386 U.S. 748, 751

---

to change counsel; and quality of counsel.

*Id.* (quoting *State v. LaGrand*, 152 Ariz. 483, 486-87, 733 P.2d 1066, 1069-70 (1987) (internal citation omitted).

(1967)) (internal citations omitted)); *see also Larson v. Palmateer*, 515 F.3d 1057, 1066-67 (9th Cir. 2008) (holding a petitioner that "complained solely about his counsel's strategic decisions and lack of communication with him," failed to show he was entitled to a new set of counsel under clearly established federal law).

This understanding reflects the Supreme Court's general guidance that while "the Sixth Amendment secures the right to the assistance of counsel, by appointment if necessary, in a trial for any serious crime," *Wheat v. United States*, 486 U.S. 153, 158-69 (1988) (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)), the purpose of providing such assistance "is simply to ensure that criminal defendants receive a fair trial." *See Strickland v. Washington*, 466 U.S. 668, 689 (1984). Accordingly, in deciding Sixth Amendment claims, "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." *See United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984). Put differently, the Sixth Amendment does not guarantee an accused a "meaningful attorney-client relationship." *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

For the foregoing reasons, Camargo's claim of constructive denial of counsel—and therefore, Ground 1 of his Petition—fails.

### B.    Ineffective Assistance of Counsel (Ground 2(A))

Camargo's claim that his post-conviction relief counsel was ineffective because he neglected to raise Camargo's claim of constructive denial of counsel also fails. As explained above, Camargo's constructive denial of counsel claim is meritless; therefore, raising it would have been futile. Because "the failure to take a futile action can never be deficient performance," *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996), this claim shall be rejected. Judge Akers' denial of change of counsel would not have been error, much less reversible error, under usual standards of appellate review, even without the extraordinary deference standard of AEDPA.

## IV.   THE MOTION FOR EXPANSION OF THE RECORD AND AN EVIDENTIARY HEARING

### A.   Constructive Denial of Counsel (Ground 1)

With regard to Ground 1, Camargo moves for an evidentiary hearing and to expand the record to include the following: (1) a declaration authored by Camargo; (2) a declaration authored by Kimble; (3) a declaration authored by Dan Cooper, "an expert in the constructive denial of counsel and denial of effective assistance of counsel;" (4) a declaration authored by court interpreter David Svoboda; (5) a declaration authored by court interpreter Sarah Seebeck; (6) the jail visitation log for Camargo from the time of his arrest through the time of his prison transfer following his conviction and sentencing; (7) an e-mail from the prosecutor to Kimble dated August 20, 2007; and (8) an e-mail chain between the prosecutor and Kimble.  (Doc. 107 at 7-9.)

Ground 1 is subject to 28 U.S.C. § 2254(d) deference, as explained above.  (*See supra*, at section III.A.1.)  "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review."[5]  *Id.* at 185.  "Thus, for claims that were adjudicated on the merits in

---

[5] Although the central holding of *Pinholster* pertained to § 2254(d)(1), the Supreme Court observed that "§ 2254(d)(2) includes the language 'in light of the evidence presented in the State court proceeding,'" providing "additional clarity" that review under § 2254(d)(2) is also limited to the record before the state court.  Therefore, for claims that were adjudicated on the merits in state court, a petitioner can only rely on the record that was before the state court to satisfy the requirements of § 2254(d).

*Catlin v. Davis*, Case No. 1:07-cv-01466-LJO-SAB, 2019 WL 6885017, at *269 (E.D. Cal. Dec. 17, 2019) (quoting *Pinholster*, 563 U.S. at 185 n.7) (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)); *see also Nasby v. McDaniel*, 853 F.3d 1049, 1054-55 (9th Cir. 2017) ("The text of the statute provides that a petitioner who seeks relief under Section (d)(2)—must show that the state court unreasonably determined the facts 'in light of the evidence presented' to the state court.  The Supreme Court has held that review under Section (d)(1)—unreasonable application of law—is similarly 'limited to the record that was before the state court,' even though AEDPA's text imposes no such

state court, petitioners can rely only on the record before the state court in order to satisfy the requirements of § 2254(d)." *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013) (citing *Pinholster*, 563 U.S. at 185 & n.7).

"If . . . considering only the evidence before the state court, the petitioner has satisfied § 2254(d)," the claim is evaluated de novo, and a federal habeas court "may consider evidence properly presented for the first time in federal court." *Crittenden v. Chappell*, 804 F.3d 998, 1010 (9th Cir. 2015) (internal quotation marks and citations omitted). However, if the petitioner has not satisfied § 2254(d), "an evidentiary hearing is pointless." *Sully v. Akers*, 725 F.3d 1057, 1075 (9th Cir. 2013) (internal citations omitted); *see also Pinholster*, 570 U.S. at 203 n.20 ("Because Pinholster has failed to demonstrate that the adjudication of his claim based on the state-court record resulted in a decision 'contrary to' or 'involv[ing] an unreasonable application' of federal law, a writ of habeas corpus 'shall not be granted' and our analysis is at an end." (citing 28 U.S.C. § 2254(d))).

Camargo's claim of constructive denial of counsel does not pass muster under 28 U.S.C. § 2254(d). (*See supra*, at section III.A.2.) An evidentiary hearing thereon would therefore be pointless. For this same reason, expanding the record thereon would be pointless as well. *See Wood v. Ryan*, 693 F.3d 1104, 1122 (9th Cir 2012) ("[Petitioner] is not entitled to an evidentiary hearing or additional discovery in federal court because this ineffective assistance of counsel claim is governed by 28 U.S.C. § 2254(d)(1), as it was adjudicated on the merits in the PCR proceedings.").

## B.    Ineffective Assistance of Counsel (Ground 2(A))

With regard to Ground 2(A), Camargo moves for an evidentiary hearing and to expand the record to include the same evidence listed with regard to Ground 1. Unlike Ground 1, Ground 2(a) is not subject to 28 U.S.C. § 2254(d) deference, as Camargo's claim of ineffective assistance of post-conviction relief counsel was never adjudicated on the merits. Therefore, *Pinholster* holds no weight here. *Cf. Godoy v. Spearman*, 861 F.3d 956, 966, 970 n.8 (9th Cir. 2017) (finding *Pinholster* did not preclude an evidentiary hearing

limitation." (quoting *Pinholster*, 563 U.S. at 181)).

because the petitioner's claim was being evaluated de novo since he fulfilled 28 U.S.C. § 2254(d)(1)'s standard).

But this does not mean Camargo's motion is meritorious.  Camargo is only entitled to an evidentiary hearing if he can (1) "show that he has not failed to develop the factual basis of the claim in the state courts;" (2) satisfy one of the factors identified by the Supreme Court in *Townsend v. Sain*, 372 U.S. 293 (1963), *overruled on other grounds by Kenney v. Tamayo-Reyes*, 504 U.S. 1 (1992);[6] and (3) "make colorable allegations that, if proved at an evidentiary hearing, would entitle him to habeas relief."  *See Insyxiengmay v. Morgan*, 403 F.3d 657, 670 (9th Cir. 2005).  Because Camargo's claim in Ground 2(A) is not colorable, he is not entitled to an evidentiary hearing thereon.  (*See supra*, at section III.B.)

With respect to Camargo's request to expand the record, "Rule 7 of the Rules Governing Section 2254 Cases authorizes a federal habeas court to expand the record to include additional material relevant to the determination of the merits of a petitioner's claims."  *See Williams v. Schriro*, 423 F. Supp. 2d 994, 1002 (D. Ariz. 2006).  Because Camargo's claim in Ground 2(A) is not colorable, any further additions to the record would be irrelevant.  There is no need to beat a dead horse.

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, an applicant may not appeal unless a certificate of appealability has been issued by an appropriate

---

[6] Those factors are:

(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; [and] (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Id.* at 313.

judicial officer.  Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district judge must either issue or deny a certificate of appealability when he or she enters a final order adverse to the applicant.  If a certificate is issued, the judge must state the specific issue or issues that satisfy 28 U.S.C. § 2253(c)(2).

Under § 2253(c)(2), a certificate of appealability may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).  For procedural rulings, a certificate of appealability will issue only if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and whether the court's procedural ruling was correct.  *Id.*

Reasonable jurists could not debate the resolution of Camargo's petition.  A certificate of appealability shall accordingly be denied.

IT IS THEREFORE ORDERED that the Report and Recommendation (Doc. 114) is accepted in part and rejected in part as provided in this order.

IT IS FURTHER ORDERED that Petitioner Alfredo Camargo's Renewed Second Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 is denied with prejudice.

IT IS FURTHER ORDERED that Petitioner Alfredo Camargo's Renewed Motion for Expansion of the Record and an Evidentiary Hearing (Doc. 107) is denied.

IT IS FURTHER ORDERED that Respondent Attorney General of the State of Arizona, who does not have custody of Petitioner Alfredo Camargo, is dismissed as an improper party in a federal habeas corpus proceeding.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Respondent David Shinn and against Petitioner Alfredo Camargo.

IT IS FURTHER ORDERED that the Clerk terminate this case.

IT IS FURTHER ORDERED denying a certificate of appealability.

Dated this 13th day of August, 2020.

_____

Neil V. Wake
Senior United States District Judge